IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ROSARIO PASSMORE, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; BRENDA L. CHAFTON, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED; MARIA WEAKS, JO ANN VEGA, KELLY SLAPE, *Plaintiffs,* vs. SSC KERRVILLE HILLTOP VILLAGE OPERATING COMPANY LLC, SSC KERRVILLE EDGEWATER OPERATING COMPANY, LLC, SSC KERRVILLE ALPINE TERRACE OPERATING COMPANY, LLC, *Defendants.* | § § § § § § § § § § § § § § § § § § § § § | SA-18-CV-00782-FB |

## ORDER

Before the Court in the above-styled and numbered cause of action is Defendants' Motion to Dismiss and to Compel Arbitration [#10]. Also before the Court are Plaintiffs' Response [#11], Defendants' Reply [#15], Plaintiffs' Sur-Reply [#18], and Defendants' Sur-Reply [#19]. On September 13, 2018, the Honorable Fred Biery referred all pre-trial proceedings in this case to the undersigned for disposition pursuant to Federal Rule of Civil Procedure 72 and Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas [#14]. The undersigned has authority to enter this Order pursuant to 28 U.S.C. § 636(b)(1)(A). For the reasons set forth below, Defendants' Motion to Dismiss and to Compel Arbitration is **DENIED.**

1

## I. Factual and Procedural Background

Plaintiffs Rosario Passmore and Brenda L. Chafton, formerly known as Brenda Agbeye, individually and on behalf of all others similarly situated (collectively, "Plaintiffs"), originally filed this action under the Fair Labor Standards Act of 1938 ("the FLSA"), as amended, 29 U.S.C. § 201 *et seq.*, on July 28, 2018, against their former employers, Defendants SSC Kerrville Hilltop Village Operating Company LLC, SSC Kerrville Edgewater Operating Company, LLC, and SSC Kerrville Alpine Terrace Operating Company, LLC (collectively, "Defendants") [#1]. In addition to asserting individual employment claims under the FLSA and Texas state law, Plaintiffs Passmore and Chafton (collectively, "Named Plaintiffs") also seek to represent a putative class of similarly-situated individuals regarding their claims under the FLSA, including certain opt-in plaintiffs who have already filed consents to join in this action. (Compl. [#1] at ¶¶ 35–36.) Plaintiffs allege that Defendants have failed to pay their registered nurses and licensed vocational nurses overtime wages for time worked in excess of forty hours per week, as required by the FLSA. (*Id.* at ¶ 2.) Named Plaintiffs seek unpaid overtime compensation on behalf of themselves and all other registered nurses and licensed vocational nurses who worked for Defendants during the past three years and were not paid at a rate of not less than one and one-half times the regular rate of pay for all hours worked in excess of forty hours in a workweek. (*Id.* at ¶ 3, 36.)

On July 28, 2018, Defendants filed a motion to compel arbitration, which is the subject of this Order. By their motion, Defendants argue that this case is subject to binding arbitration based on arbitration agreements signed by Named Plaintiffs as a condition of their employment with Defendants. Plaintiffs moved to conditional certify the class on October 29, 2018 [#21]. To date, three opt-in plaintiffs have filed consents to join this action: Maria Weaks, Jo Ann

Vega, and Kelly Slape [#3]. Defendants filed a motion to strike or, in the alternative, to stay Plaintiffs' motion for conditional certification on November 14, 2018 [#24]. On November 15, 2018, the Court granted in part and denied in part that motion, staying briefing on Plaintiffs' motion for conditional certification, as well as all discovery, until the Court has ruled on Defendants' motion to compel arbitration [#27].

## II.  Governing Law

Courts apply a two-step inquiry in determining whether the parties have agreed to arbitrate a claim. "The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016). In the absence of a valid delegation clause, both steps are questions for the Court, not the arbitrator. *Id.* (quoting *Will-Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)).

Because arbitration is a matter of contract, "the strong federal policy favoring arbitration does not apply to the initial determination of whether there is a valid agreement to arbitrate." *Klein v. Nabors Drilling USA L.P.*, 710 F.3d 234, 236 (5th Cir. 2013) (citing *Will-Drill Res.*, 352 F.3d at 214). Instead, "the court must decide the question independently, 'apply[ing] ordinary state-law principles that govern the formation of contracts.'" *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448, 453 (5th Cir. 2013) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943–44 (1995)). Hence, the party moving to compel arbitration bears the initial burden of proving the existence of a valid arbitration agreement. *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018).

The Federal Arbitration Act ("the FAA"), 9 U.S.C. § 1 *et. seq.*, applies in this case, which the parties do not dispute. (Pls.' Resp. [#11] at 3 n.4; Doc. 11, Ex. A at ¶ 13). The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA instructs a court to stay an action on application of one of the parties if the court determines that the parties have agreed to arbitrate a claim brought before it and that the issue is in fact arbitrable. *See id.* at § 3.

While the Supreme Court has described Section 2 as "a congressional declaration of a liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), it has also cautioned that arbitration under the FAA "is a matter of consent, not coercion, and the parties are generally free to structure their arbitration agreements as they see fit." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 469 (1989); *see Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) ("The FAA reflects the fundamental principle that arbitration is a matter of contract."). Thus, in deciding whether to send a dispute to arbitration, this Court must balance two principles of arbitrability set forth in Supreme Court precedents. The first principle is that the FAA establishes a national policy favoring arbitration where, as here, the parties contract for that mode of dispute resolution. Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985) (quoting *Moses H. Cone*, 460 U.S. at 24–25).

On the other hand, arbitration under the FAA is a matter of consent and the FAA's pro-arbitration policy does not operate without regard to the wishes of the contracting parties. *See*

*Volt Info. Scis.*, 489 U.S. at 468. Rather, arbitration "is a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options*, 514 U.S. at 943. Consequently, "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010). Similarly, "courts are bound to interpret contracts in accordance with the expressed intentions of the parties—even if the effect of those intentions is to limit arbitration." *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995). Thus, the federal presumption in favor of arbitration applies only when an agreement to arbitrate is ambiguous as to whether it covers the dispute at hand. *See E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002) ("Absent some ambiguity in the agreement . . . it is the language of the contract that defines the scope of disputes subject to arbitration. . . . For nothing in the statute authorizes a court to compel arbitration of any issues, or by any parties, that are not already covered in the agreement.").

Because the denial of a motion to compel arbitration is non-dispositive, the undersigned can issue an order rather than a report and recommendation. The Fifth Circuit has not yet directly addressed whether motions to compel arbitration are dispositive for purposes of 28 U.S.C. § 636(b)(1). However, the two courts of appeals to have considered this issue have held that such motions are non-dispositive. *See Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 133–34 (3d Cir. 2014) (holding that motions to compel arbitration are non-dispositive because a ruling on such a motion "does not dispose of the case, or any claim or defense found therein"; rather, "orders granting this type of motion merely suspend the litigation while orders denying it continue the underlying litigation"); *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10 (1st Cir. 2010) (concluding that a motion to compel arbitration is non-

5

dispositive because, even if such a motion is granted, a district court still retrains authority to dissolve the stay or to review the arbitration award). In addition, the federal district courts in Texas to have considered this issue have consistently treated motions to compel arbitration as non-dispositive. *See Adams v. Energy Transfer Partners*, No. 2:16-CV-400, 2017 WL 2347425, at *1 (S.D. Tex. May 30, 2017); *Archer & White Sales, Inc. v. Henry Schein, Inc.*, No 2:12–cv–572–JRG, 2016 WL 7157421, at *2 (E.D. Tex. Dec. 7, 2016), *aff'd*, 878 F.3d 488 (5th Cir. 2017), *cert. granted*, 138 S. Ct. 2678 (2018); *Tige Boats, Inc. v. Interplastic Corp.*, No. 1:15-CV-0114-P-BL, 2015 WL 9268423, at *1–3 (N.D. Tex. Dec. 21, 2015).

### III. Analysis

While Defendants have met their burden of demonstrating that the parties entered into a valid arbitration agreement, the agreement unambiguously excludes class and collective actions from its scope. Therefore, Defendants' motion to compel arbitration is denied.

**A.     The parties entered a valid arbitration agreement.**

The validity of an arbitration agreement turns on state contract law. *See Huckaba*, 892 F.3d at 688 (citing *Kubala*, 830 F.3d at 202). Thus, "to determine whether an agreement to arbitrate is valid, courts apply 'ordinary state-law principles that govern the formation of contracts.'" *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 205 (5th Cir. 2012) (quoting *Morrison v. Amway Corp.*, 517 F.3d 248, 254 (5th Cir. 2008)). The parties agree that Texas law governs the validity of their agreement. Agreements to arbitrate disputes between employers and employees are broadly enforceable in Texas. *See In re Poly-Am., L.P.*, 262 S.W.3d 337, 348 (Tex. 2008); *In re Dallas Peterbilt, Ltd., L.L.P.*, 196 S.W.3d 161, 162 (Tex. 2006).

The Employment Dispute Resolution ("EDR") Program, as set forth in both the EDR Book and EDR Program Agreement, memorializes the parties' agreement to submit to arbitration

"all claims, controversies or disputes relating to [the employee's] application for employment, [the employee's] employment and/or termination of employment." (Doc. 10, Ex. C at 2; Ex. D. at 3.) The EDR Program provides, in pertinent part, that:

> If the parties cannot mutually resolve the dispute in the first three steps, the Company has agreed to submit the dispute to an outside, impartial arbitrator and to accept the decision of the arbitrator as final and binding. . . . Your decision to accept employment or to continue employment with the Company constitutes your agreement to be bound by the EDR Program. Likewise, the Company agrees to be bound by the EDR Program. This mutual agreement to arbitrate claims means that both you and the Company are bound to use the EDR Program as the only means of resolving employment related disputes and to forego any right either may have to a jury trial on issues covered by the EDR Program.

(Doc. 11, Ex. A at ¶ 2.) Passmore agreed to the terms of the EDR Program on two occasions, and Chafton confirmed on four occasions during her employment with Defendants that she would comply with the terms of the EDR Program. (Mot. to Compel [#10] at 13.)

Plaintiffs argue that Defendants have not established that a valid arbitration agreement exists because the EDR Book refers to a document outside of the agreement, the "detailed rules" specific to the mediation and arbitration steps of the EDR Program, and Defendants have not provided such "detailed rules" to the Court. (Doc. 11, Ex. A at ¶ 5). But the record establishes that all three references to such rules in the EDR Book refer to the American Arbitration Association's ("AAA") Employment Arbitration Rules, and that these rules would apply to the arbitration of Plaintiffs' claims in this case. (Doc. 15, Ex. A at ¶¶ 4–5.) Plaintiffs have cited no authority, and the Court has found none, to support their position that incorporating and referring to the AAA's Employment Arbitration Rules, which many arbitration policies do, renders an otherwise enforceable arbitration agreement unenforceable.

As there is no dispute that Named Plaintiffs signed the EDR Program Agreement and the EDR Program Acknowledgment,[1] and it is clear that the rules that govern the EDR Program are the AAA's Employment Arbitration Rules, Defendants have established that a valid agreement to arbitrate governs any employment-related claims of Named Plaintiffs that fall within the agreement's scope.

B. **The arbitration agreement unambiguously excludes class and collective actions from its scope and does not, as Defendants claim, prohibit or waive such actions.**

According to its explicit terms, the EDR Program "covers only claims by individuals and does not cover class or collective actions." (Doc. 11, Ex. A at ¶ 4.) Plaintiffs bring their claims as a collective action under the FLSA. Therefore, the claims asserted by Named Plaintiffs in this collective action are "not cover[ed]" by the arbitration agreement, and Defendants' motion to compel arbitration is denied. (*Id.*)

Plaintiffs' employment with Defendants was conditioned on their agreement to be bound by the EDR Program. The EDR Book provides that "[t]his mutual agreement to arbitrate claims means that both you and the Company are bound to use the EDR Program as the only means of resolving employment related disputes and to forego any right either may have to a jury trial on issues covered by the EDR Program." (*Id.*) The EDR Book further provides that "[d]isputes covered under the EDR Program pertain to claims such as discipline, discrimination, fair treatment, harassment, termination and other legally protected rights." (*Id.* at ¶ 9.) The EDR Book expressly excludes certain claims from the EDR Program's coverage: "Disputes not covered under the EDR Program relate to workers' compensation, unemployment benefits,

---

[1] The EDR Program Acknowledgment signed by Passmore is attached as part of Exhibit C to Defendants' Motion to Dismiss and to Compel Arbitration [#10]. The EDR Program Acknowledgment signed by Chafton is attached as part of Exhibit D to Defendants' Motion to Dismiss and to Compel Arbitration [#10].

health, welfare and retirement benefits and claims by the Company for injunctive relief to protect trade secrets and confidential information." (*Id.* at ¶ 10.) In addition, the EDR Book states that the EDR "Program covers only claims by individuals and does not cover class or collective actions" ("the Disputed Sentence"). (*Id.* at ¶ 4.).

Assigning the words in the Disputed Sentence their ordinary meaning, the agreement explicitly excludes class and collective actions from its scope. Contract language must be afforded its plain, ordinary, and generally accepted meaning, unless the instrument directs otherwise. *See Gilbert Texas Const., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010) ("[W]e presume parties intend what the words of their contract say."); *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 662 (Tex. 2005) ("Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense."). Here, the parties agreed that "[t]his Program covers only claims by individuals and does not cover class or collective actions." (Doc. 11, Ex. A at ¶ 4.) Thus, the EDR Program applies to individual claims and not class or collective claims. That is the ordinary construction of "cover."[2] The Third Circuit, construing identical contractual language, likewise concluded that "the arbitration clause's plain language excludes class and collective actions from mandatory arbitration." *See Novosad v. Broomall Operating Co. LP*, 684 F. App'x 165, 166 (3d Cir. 2017).

Despite the Disputed Sentence's unambiguous language, Defendants propose an alternative construction: that it is class and collective action waiver. According to Defendants,

---

[2] The ordinary meaning of "cover" is "to have sufficient scope to include or take into account." *Cover*, MERRIAM-WEBSTER ONLINE DICTIONARY, http:www.merriam-webster.com/dictionary/cover (last visited Nov. 5, 2018); *see Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 382 n.6 (Tex. 2012) (citing Merriam-Webster Online Dictionary for the definition of "property" in an insurance policy ).

the phrase "does not cover class or collective actions" should be interpreted not to exclude such actions from arbitration, but to waive an employee's right to participate in such actions altogether. (Doc. 11, Ex. A at ¶ 4.) Defendants' interpretation of this unambiguous sentence is creative but tortured. The only reasonable interpretation of the agreement is that class and collective actions are *excluded* from arbitration; and there is nothing in that sentence—or anywhere else in the agreement—that could be understood as a valid waiver of the signatory employee's right to assert claims on a class or collective basis. The Disputed Sentence does not contain the words "waive" or "prohibit" or any of their derivatives or synonyms.

Defendants' proposed construction of the Disputed Sentence is less convincing when its language is considered in the context of the sentences that precede it:

> This mutual agreement to arbitrate claims means that both you and the Company are bound to use the EDR Program as the only means of resolving employment-related disputes and to ***forego any right either may have to a jury trial*** on issues covered by the EDR Program. However, ***no remedies that otherwise would be available to you*** or the company ***in a court of law will be forfeited by virtue of the agreement to use and be bound by the EDR Program.*** This Program covers only claims by individuals and does not cover class or collective actions.

(Doc. 11, Ex. A at ¶ 4 (emphasis added).) The highlighted language constitutes unambiguous waiver language regarding the employee's right to a jury trial on covered issues and follows that explicit waiver language with an equally clear clarification that the employee is *not* waiving any other rights he or she would otherwise have in a court of law, which would include a right to proceed collectively. The Disputed Sentence cannot be construed as a collective or class action waiver in this context without reading waiver language into the parties' agreement that simply does not exist, which is even more troubling when considered in light of the drafting employer's obvious ability to be explicit about waiving employee rights. The Disputed Sentence is the *only* mention of class or collective actions in any of the documents governing the EDR Program.

Thus, it is not as if that final sentence could be read in conjunction with some other language regarding a plausible waiver of class and collective action rights.

Defendants' proposed construction of the Disputed Sentence as a class and collective action waiver also renders certain of the agreement's terms inconsistent with each other. The same words used in different parts of a contract must be given the same meaning, unless context dictates otherwise. *See*, *e.g.*, *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 126 (Tex. 2015) ("Generally, the law recognizes 'a natural presumption that identical words used in different parts of the same act are intended to have the same meaning.'") (quoting *Atl. Cleaners & Dyers v. U.S.*, 286 U.S. 427, 433 (1932)). The EDR Book uses the word "cover" (or its derivatives) thirteen times. With two exceptions, the EDR Book uses the word "cover" to describe the types of issues or employees "covered" by (and thus "included" in) and "not covered" by (and thus "excluded" from) the EDR Program. (Doc. 11, Ex. A at ¶¶ 4, 8, 9, 10; Ex. A. at 13.) In the other two instances, "cover" is used to refer to the law governing the EDR Program. (*Id.* at ¶ 13.) Defendants' construction of the words "does not cover" in the Disputed Sentence to mean a waiver or prohibition would require the Court to assign "cover" (and "does not cover") in that sentence a different meaning than the word and its derivatives have in every other place in the agreement. Instead, the Court presumes that the parties intended for that word to bear the same meaning throughout the agreement.

Defendants contend that their proposed construction makes sense when the Disputed Sentence is considered in the context of the entire EDR Program. The undersigned disagrees. Certain claims are expressly excluded from the EDR Program's coverage: "Disputes not covered under the EDR Program relate to workers' compensation, unemployment benefits, health, welfare and retirement benefits and claims by the Company for injunctive relief to protect trade

secrets and confidential information." (*Id.* at ¶ 10.) Defendants emphasize the absence of class and collection actions from this list of excluded claims, arguing that this means that such claims are not excluded. But nothing in this sentence indicates its enumerated claims are the *only* matters not covered by the EDR Program. Additionally, this sentence excludes certain *claims* from the scope of the EDR Program, while the Disputed Sentence excludes certain *actions* from the program's scope, *regardless of the claims asserted therein*. Thus, it is not surprising that class and collective *actions* were not listed among the types of *claims* (or "[d]isputes") not covered under the EDR Program. (*Id.*)

In urging their construction of the Disputed Sentence as a collective and class action waiver, Defendants also emphasize that the EDR Book states that the EDR Program is "*the only means of resolving employment related disputes* . . . on issues covered by the EDR Program." (*Id.* at ¶ 4 (emphasis added).) Defendants also note that the EDR Program Agreement provides that "both the Company and I agree to resolve *all* claims, controversies or disputes relating to my application for employment, my employment and/or termination of employment with the Company exclusively through the Company's Employment Dispute Resolution Program." (Doc. 10, Ex. C at 2; Ex. D. at 3 (emphasis added).). The EDR Program Agreement further provides that "I understand and agree that this mutual agreement to use the EDR Program and to arbitrate claims means that the Company and I are bound to use the EDR Program as *the only means of resolving employment related disputes and to forego any right either may have to a jury trial*." (*Id.* (emphasis added).) Relying on these excerpts from the EDR Book and the EDR Program Agreement, Defendants claim that Plaintiffs expressly and unambiguously agreed to resolve all employment-related claims through the EDR Program, "which provides that final and binding arbitration is the only means of resolving such disputes," and that, therefore, the EDR Program

disallows collective and class actions to proceed outside of (or in) arbitration. (Defs.' Reply [#15] at 5.) Defendants' argument is at odds with the agreement's plain language. The agreement does not require arbitration of *all* employment-related claims, but only those "covered by the EDR Program." (Doc. 11, Ex. A at ¶ 4.) At a minimum, the agreement excludes the types of disputes listed in the tenth paragraph of the EDR Book from mandatory arbitration, which Defendants concede.

Defendants' rely on an unpublished, North Carolina district court opinion to support their construction of the Disputed Sentence as a collective and class actions waiver: *Allen v. SSC Lexington Operating Co. LLC*, No. 1:16CV1080, 2017 WL 4357449 (M.D.N.C. Sept. 29, 2017). The *Allen* court, interpreting identical contractual language, deemed it ambiguous—without any explanation. The *Allen* court's construction of the Disputed Sentence as a waiver was apparently motivated by its concern that, under the plaintiff's interpretation, "a party could circumvent the EDR Program by bringing a class or collective action outside of arbitration." *Id.* at *3. But in addressing that concern, the *Allen* court essentially re-wrote the parties' contract, which is contrary to Texas contract law. *See In re Davenport*, 522 S.W.3d at 457–58 ("We cannot make new contracts between the parties and must enforce the contract as written. When the terms are plain, definite, and unambiguous, as they are here, the court cannot vary these terms.") Courts cannot extend arbitration agreements beyond the expressed intentions of the parties. *See Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 565 (2013) ("Class arbitration is a matter of consent: An arbitrator may employ class procedures only if the parties have authorized them."); *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010) ("[A] party may not be compelled under the FAA to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so.").

Of course, class action waivers in employment arbitration agreements are enforceable. S*ee Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1623 (2018). This Court would thus be required to enforce an express, valid waiver of the Named Plaintiffs' class and collective action rights, if the agreement contained one. But to interpret the Disputed Sentence as waiving or prohibiting class or collective actions makes little sense in the context of the entire agreement, as explained above. Notably, the disputed language here is distinguishable from the clear waiver language that the Supreme Court has upheld as validly waiving an employee's right to participate in class or collective actions. *See Epic Sys. Corp.*, 138 S. Ct. at 1620 (agreement specified individualized arbitration, with claims "pertaining to different [e]mployees [to] be heard in separate proceedings"); *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 231 (2013) (agreement required all disputes between the parites to be resolved by arbitration and provided that "there shall be no right or authority for any Claims to be arbitrated on a class action basis"); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011) (contract provided for arbitration of all disputes between the parties, but required that claims be brought in the parties' "individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding" and further stated that "the arbitrator may not consolidate more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding"). In contrast, here, the Disputed Sentence plainly limits the scope of the EDR Program to individual employment-related claims, rather than class or collective action employment-related claims. Because the plain language of the agreement indicates that the parties did not agree to arbitrate Plaintiffs' putative class and/or collective action claims, Defendants' motion to compel arbitration is denied.

## IV. Conclusion

Based on the foregoing, the undersigned finds that the arbitration agreement's plain and unambiguous language excludes class and collective actions from mandatory arbitration. Thus, the motion compel arbitration of this putative collective action is denied.

In accordance with the foregoing, the Court now enters the following:

**IT IS ORDERED** that Defendants' Motion to Dismiss and to Compel Arbitration [#10] is **DENIED;**

**IT IS FURTHER ORDERED** that Defendants file a response to Plaintiffs' Motion for Conditional Certification [#21] within twenty-one (21) days of the date of this Order; and

**IT IS FINALLY ORDERED** that the parties confer and submit proposed scheduling order deadlines within thirty (30) days of the date of this Order.

**IT IS SO ORDERED**.

SIGNED this 4th day of January, 2019.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE